### THE STATE v. GEORGE WILLIAMS.

1. Any place of public resort, in which illegal practices are habitually carried on, or when it becomes the habitual resort of thieves, drunkards, prostitutes, or other idle, vicious, and disorderly persons, who gather together there for the purpose of gratifying their own depraved appetites, or to make it a rendezvous where plans may be concocted for depredations upon society, and to disturb either its peace or its rights of property, is a public nuisance.

2. No private individual has a right, for his own amusement or gain, to carry on a public business clearly injurious to and destructive of the public quiet, health, or morals, and is indictable for so doing, because the injury is of a public character to the public, and not merely private to a single individual.

3. Violence and noise are not necessary constituents of a disorderly house; it is sufficient to show, under the general allegations, a house ill governed and disorderly, in the sense stated, to warrant a conviction.

4. Any person who keeps, or causes to be kept, for his own profit or amusement, or for any other cause, such a place of resort, or rents any building to any person knowing that the same will be so kept, is guilty of an indictable misdemeanor.

5. To justify a conviction of a landlord, who rents to a tenant a place kept as a disorderly house, the evidence should clearly show that, at the time of leasing, the landlord knew the purposes for which, or the mode in which the house was to be kept.

6. The mere power of the landlord to expel his tenant, by summary proceedings, for nonpayment of rent according to the terms of the letting, although connected with the failure to avail himself of it when the house has been disorderly, does not of itself make him responsible.

7. Mere nonfeasance on the part of the landlord cannot involve him in the guilt of the tenant; but if he is active in advising the keeping of the house in a disorderly manner, or in aiding or assisting, or gives his consent and approbation to its being so kept, he becomes a participant in the act characterized by the criminal law as disorderly; but his sanction and consent ought not to be inferred from the mere fact of his non-interference with the conduct of his tenant, without some other acts or declarations on his part giving a decided character to his sanction and consent.

8. The sale of liquor on the Sabbath day is unlawful, and a practice of so keeping a house as to violate the law is to make it disorderly.

---

On case certified for the advisory opinion of this court.

The defendant was indicted, in the Court of Oyer and Terminer in and for the county of Passaic, for keeping a disorderly house. The indictment was in the usual form. Upon the trial, the court charged the jury, among other things, that selling beer on Sunday constituted a disorderly house, if the jury believed that the defendant made it a practice to do so whenever he had customers.

To this part of the charge, and also to other parts (which are referred to in the opinion of the court) the defendant's

counsel objected; and the defendant having been found guilty, the advisory opinion of this court is requested as to the correctness of the charge.*

The case was argued by *A. B. Woodruff*, for the State, and *J. Hopper*, for the defendant.

CHIEF JUSTICE.  Any place of public resort, whether an inn, a dwelling house, a storehouse, or any other building, or garden, is a public nuisance, in which illegal practices are habitually carried on, or when it becomes the habitual resort of thieves, drunkards, prostitutes, or other idle, vicious, and disorderly persons, who gather together there for the purpose of gratifying their own depraved appetites, or to make it a rendezvous where plans may be concocted for depredations upon society, and disturbing either its peace or its rights of property.

Such collections of persons can have no other effect than to debauch and deprave the public morals, although they may be quiet and orderly places, so far as mere noise and confusion is concerned; although the most scrupulous cleanliness may be observed, and they may be magnificent in ornament, and luxurious in their provisions for mere sensual gratifications, they are notable nuisances at common law, because they are *nocumenti*, nuisances, that is, injurious to the public health, public quiet, or public morals.

No private individual has a right, for his own amusement or gain, to carry on a public business clearly injurious to and destructive of the public quiet, health, or morals, and is indictable for so doing, because the injury is of a public character to the public, and not merely private, or to a single individual.

It is a mistaken view of this crime to hold that violence or noise disturbing the neighborhood are necessary constituents

---

*The reporter regrets that he has not been able to procure a copy of the charge for insertion in the case.

of it.   The indictments usually contain averments of whoring, gambling, tippling, fighting, cursing and swearing, as occurring habitually at the place; but these are merely descriptive averments, and need not all be proved.   It is sufficient to show, under these general allegations, a house ill-governed and disorderly, in the sense stated, to warrant a conviction.

This is the rule to be extracted from the cases, some only of which will be referred to, among the many cited on the very able and interesting argument with which the court was favored by the learned prosecutor who argued this case before us.   *Faulkner's case,* 1 *Saund.* 248; 2 *Chitty's Cr. Law* 673–4; *King* v. *Rogier,* 1 *B. & C.* 72; *King* v. *Taylor,* 3 *B. & C.* 502; *Tanner* v. *Trustees of Albion,* 5 *Hill* 121; *King* v. *Moore,* 3 *B. & Ad.* 184; *Bac. Abr., tit. Inns (A); Russell on Crimes* 320–326.

Any person who keeps, or causes to be kept for his own profit or amusement, or for any other cause, such a place of resort as I have described, or rents any building to any person knowing that the same will be so kept, is also guilty of an indictable misdemeanor.   In misdemeanors all are principals—the procurer, the accessory before the fact, and the aider and abettor.

To justify a conviction of a landlord who rents to a tenant a place kept as a disorderly house, the evidence should clearly show that, at the time of leasing, the landlord knew the purposes for which, or the mode in which the house was to be kept.   The mere fact of his being landlord of a disorderly house, and receiving the rent of it earned by the keeper, is not enough.   He should not be held as a participator in the crime of his tenant, merely because he does not remonstrate with or threaten him with expulsion if he does not control his house in accordance with the law.

In that respect the liability and duty of the landlord is no more than that of any other citizen; but if the landlord rents for a year, and the house during the year is, with the knowledge of the landlord, kept in a disorderly manner, so as to be indictable, and notwithstanding this knowledge he

rents to the same tenant for another year, this will, in most cases, be strong evidence to charge the landlord with procuring the house to be so kept.

But the mere power of the landlord to expel his tenant by summary proceedings for nonpayment of rent according to the terms of the letting, although connected with the failure to avail himself of it when the house has been ʼdisorderly, does not of itself make him responsible.

Mere nonfeasance on the part of the landlord cannot involve him in the guilt of the tenant; but if he is active in advising the keeping of the house in a disorderly manner, or in aiding and assisting, or gives his consent and approbation to its being so kept, he becomes a participant in the acts characterized by the criminal law as disorderly.

But his sanction and consent ought not to be inferred from the mere fact of his non-interference with the conduct of his tenant, without some other acts or declarations on his part giving a decided character to his sanction and consent.

The position of the landlord of a tenant keeping a disorderly house, irrespective of the act of letting the house for the purpose of being so used, or keeping the tenant after his character and business become known, in no wise differs from that of a stranger. As to sanction and approval, that which would make a stranger liable would make him liable. *Com. v. Harrington*, 3 *Pick.* 28; *The People* v. *Erwin and Clark*, 4 *Denio* 129; 1 *Hawk. P. C. Ch.* 77.

The cases cited proceed on the ground that in misdemeanors all are principals, and that aiding in the commission of a misdemeanor, or counselling and procuring its commission, renders the aider guilty as a principal. In those two cases the lessee of a bawdy-house, and one who leased it for that purpose, were held both as keepers of it.

To apply these principles to the case before the court, the judge at the oyer charged the jury, that the habitual sale of rum on Sunday by the defendant made his house a nuisance, and the jury seem to have convicted the defendant upon this ground; for when polled they said, at least some of them,

that they agreed to the verdict because of the instructions of the court just stated.

The defendant's counsel objected to the instructions mainly upon the ground, that such acts, unaccompanied with other circumstances, did not constitute the house disorderly; that if they did, the defendant might be punished twice for the same offence, as he was liable to indictment for each act of selling.

If the argument has any merit, it is rather specious than sound. We have already seen that a house where the law is habitually violated is, if a place of public resort, a nuisance.

The argument proves too much. If it were sound, no indictment for keeping a disorderly house could be maintained. The fighting, cursing, gambling, tippling, &c., said to be necessary to make a house a nuisance, are all, or most of them crimes, and punishable as such.

The offence of keeping a disorderly house or nuisance consists not in the fact that the keeper commits any of these crimes himself, but that he permits his house to be made a nuisance to the neighborhood by suffering the commission of these crimes there, whether by himself or others, is immaterial. Surely the fact that he himself engages in the commission of them does not render him less guilty, nor is the defendant punished for the same offence.

He may be punished for each violation of the liquor law, and also for keeping a resort for violators of the law, to the detriment of the public morals.

The same individuals may be punished for a riot and an assault and battery, or for an arson or murder committed during the riot by one of the rioters.

In directing the jury upon the subject of the responsibility of landlords for the houses kept by their lessees, I think the learned judge went too far. It is hardly fair to say that a landlord is liable, who does not remonstrate with his tenant about the disorder of his house. The judge says the question of fact is, whether the house has thus been kept by the

procurement or with the knowledge and connivance of the owner. If it has, he says the law condemns the acquiescence, and holds the owner responsible.

Again he says, if the owner or landlord uses or permits the property to be used without objection in a manner injurious to the public, whereby it becomes a nuisance, he must answer for it.

It would seem that the learned judge's language is fairly susceptible of the meaning, that if the owner who has leased a house for a year, and has, by the terms of his lease, no control over the tenant, fails to go to the tenant and object to his irregularities, he so far acquiesces in them as to make himself liable. If that is the meaning, I cannot agree to the doctrine.

Mere acquiescence of the owner, or failure to object when he has no power of controlling or removing the tenant, cannot make him liable. It may be otherwise where the landlord has a control, and he fails to exercise it, although that is carrying the doctrine of aiding and abetting to a great length.

Thinking, as I do, that the verdict was found upon the ground that the defendant was himself in this house, and a habitual violator of the law in a public manner, by the unlawful sale of beer on Sundays, I think there should be judgment on the verdict.

ELMER, J. Upon the trial of an indictment, in the usual form, for keeping a disorderly house, it was proved that the defendant had a counter in the room occupied by him, and beer barrels, and that he sold beer from the barrels every Sunday during the time charged, or whenever any one called for it. After the jury had consulted, they desired further instructions from the court, and asked, " does selling beer on Sundays constitute a disorderly house ?" To this the court answered, " it does, if the jury believe that he made a practice to do so whenever he had customers." This charge

being objected to on behalf of the defendant, the opinion of this court is now requested as to its correctness.

That selling or offering to sell beer on Sunday is prohibited by the statute and indictable is not disputed. But it is insisted that each specific offence must be indicted under the statute, and that the practice of violating this law does not constitute a disorderly house, unless, besides the mere fact of selling, it shall appear that disturbances occur, or minors or other improper persons are allowed to frequent the house. The mere repetition of unlawful acts, it is urged, cannot create a nuisance, and that the effect of sustaining this charge will be that a person may be twice punished for the same offence.

A house to which people promiscuously resort for purposes injurious to the public morals or health, or convenience or safety, is a nuisance, and the keeper is liable to indictment for keeping a disorderly house. That bawdy and gaming houses, and houses of entertainment resorted to by prostitutes, thieves, and vagabonds are of this character cannot be doubted.

Gaming is not of itself indictable at common law, but the keeping of a common gaming house is. Such houses have for a long period been held by the courts to be necessarily injurious to public morals, and therefore indictable as nuisances. *Hawk. b, 1, c. 75, § 6.*

The legislation of this state, from an early period, has been directed to the object of preserving to its citizens a quiet day of rest and worship upon one day out of the seven, and now the sale of spirituous and fermented liquors on Sunday is absolutely prohibited, even to those licensed to keep an inn. Conduct, therefore, which may be allowable on other days, if permitted on Sunday, may make a house disorderly; because it is greatly to the benefit of all classes of the community, and especially of those earning their bread by daily labor, that it should be set apart for quiet repose and religious observances. I entirely concur in the opinion of Booth, C. J., *Hall* v. *The State*, 4 *Harr.* 145, that the keeper of an inn or tavern (and of course any other person) who conducts himself in such manner, either in the enter-

tainment of travellers or other persons, or in permitting improper assemblages in or about his house on Sunday as profanes the Lord's day, or violates public order and decorum, or shocks the religious sense or feelings of the neighborhood, is guilty of a nuisance at common law.

A shopkeeper or other person may sell spirituous liquor by any measure not less than a quart, but it is no part of his legitimate business to permit the purchasers to remain upon his premises while they drink it; and if he is in the habit of doing this, so as to allow intoxicated or otherwise disorderly persons or minors to remain on his premises, or to make his premises their place of resort, whereby they become intoxicated, he is a corruptor of the public morals, and endangers the peace of the community, and is obnoxious to punishment as the keeper of a disorderly house. The same effect may be produced, and the same consequences may follow from the practice of giving away intoxicating liquor. In these and similar cases it is not the illegal sale of liquor which constitutes the offence, but so keeping a house as to make it injurious to the community, and therefore a nuisance. But I think the court was correct in charging that a practice of so keeping a house as therein to violate the law makes it disorderly. It was held, I think in entire accordance with sound principle by the Court of Appeals of Kentucky, " that the habitual perpetration of the prohibited offences in a house kept for the purpose constitutes the house a public nuisance, as it tends in a greater degree to the spread of the evil which was intended to be prohibited." 6 B. Mon. 21 ;* 12 B. Mon. 2.† It is remarked by Bishop, in commenting on these cases, as it appears to me correctly, that a man who holds out inducements for people to congregate and together commit violations of a statute, not only lends the concurrence of his will to their wrongful acts, but also does what most powerfully tends to injure the public virtue ; or if he thus draws people together, that in their presence he may himself infringe a law of his country, he accomplishes the same evil end. 2 Bish. Crim. L., § 258.

---

*Smith v. Commonwealth.    †Commonwealth v. McGeorge.

That the defendant may also be indicted for each specific act of selling is no answer to this charge. The offences are not the same. Nor is it universally true that a man cannot be twice punished for the same act. The same act may be part of two offences. A conspiracy to steal and the larceny itself may be indicted and punished separately. *Rex* v. *Button,* 11 *Adol. & Ell. N. S.* 929. And so may burglary and the act of stealing which shows the guilty intent. If the act is indivisible, as for instance altering and selling forged notes, there is but one offence. The unlawful selling of liquor, which may take place in or out of a house, is wholly distinct from the keeping of a house where the unlawful proceeding is habitual. The seller and the keeper of the house may be the same person or wholly different. The keepers of bawdy and gaming houses, if they themselves game unlawfully, or commit fornication or adultery, may be punished for each of those offences, and also for maintaining the nuisance. I am clearly of opinion that there was no error in this part of the charge.

It was also proven in this case that the defendant owned several contiguous houses, and himself occupied parts of one, and that the other houses, as well as part of that he himself occupied, were possessed by his tenants, and that some of the tenants had been guilty of fighting, quarrelling, and misbehaving in the yard and in the street in front of the houses, to the annoyance and disturbance of the neighbors.

The court submitted the question to the jury whether the facts in evidence made the defendant responsible for the misconduct of his tenants? This part of the charge was also excepted to, and our opinion is asked as to its correctness. Some of the expressions used, if unexplained by the context, seem to be doubtful, as for instance the remark, that the rent which the defendant receives or agrees for is sufficient to show the benefit he received from the manner in which the house has been maintained. If there would seem to be danger that the jury might understand this as intimating that the mere receipt of rent from the tenants was sufficient

it would be erroneous. But it is very evident, I think, that this was not the case. The explicit language of the charge is, " the question of fact is, whether the house has been thus kept by the procurement or with the knowledge and concurrence of the owner."

That the letting of a house, with a knowledge that it is intended to be kept in a disorderly manner, will render the landlord indictable as a principal in keeping a disorderly house, was expressly and correctly decided in *The People* v. *Erwin*, 4 *Denio* 129. Such guilty knowledge, I think, may in general be fairly inferred from proof that the landlord, after he knew that his tenant was in the habit of so acting, renewed the lease, and made no real effort to restrain him. The continual receipt of rent, and a persistence in enlarging the term of a disorderly tenant, who earns the means of paying the rent by misconduct visible to the landlord, may amount to very satisfactory evidence that he did in fact procure and sanction the disorderly conduct. This was the substance of the charge. It is quite apparent, from the whole case, that the verdict of the jury was rightly founded, not on the misconduct of the tenants, but on the personal acts of the defendant. I am therefore of opinion that the Oyer and Terminer should be advised to deny a new trial.

HAINES, J., concurred.

The court below is advised to render judgment on the verdict.

CITED in *State* v. *Lovell*, 10 *Vroom* 464; *Cuff, Adm'x*, v. *Newark and New York R. R. Co.*, 6 *Vroom* 27.