### ROBERT ESTELL v. STATE.

1. In a case of homicide, the narrative of the transaction given by the injured man, a few minutes after the affair and after the defendant had left, is not admissible in evidence as a part of the *res gestæ.*
2. The mere unlawfulness of an act done, the same not being *malum in se,* will not make the doer criminally liable for its unforeseen consequences, such act being neither dangerous in its nature nor dangerous from the mode of its execution.

---

On error to the Monmouth Quarter Sessions.

Argued at November Term, 1888, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL, KNAPP and GARRISON.

For the plaintiff in error, *Aaron E. Johnston.*

For the state, *Charles Haight.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This writ of error has brought up the record of the conviction of the plaintiff in error before the Monmouth Sessions of the crime of manslaughter.

The pertinent facts were these: The defendant drove his team of mules attached to a wagon through a toll gate of which the deceased man, William H. Hart, was keeper. The

state alleged that the defendant's purpose was to escape the payment of toll. Hart, in frustration of this design, ran out and endeavored to stop the team by seizing some part of the harness, and either by this act, or, as was alleged by the state, by incitement from the defendant, the team broke into a run. Hart was dragged a short distance, fell to the ground, the wagon wheels passing over his body, and so badly injuring him that he died within two days.

The first objection against the proceedings at the trial, as appears from the bill of exceptions, relates to certain statements made by Hart, the injured man; they were made under these circumstances: Hart was run over thirty or forty yards from the toll house; the defendant drove away, leaving him insensible on the ground; in a few minutes he was removed into the toll house, and after being there a short time, perhaps fifteen or twenty minutes, he made the statements in question, being questioned by his wife, thus: "I said to him, 'Why did you not let go?' and he said, 'I could not let go, for they whipped up their horses and urged them on, and I did not dare let go for fear I would go under the wheel, they were going so fast?' He said they ran over him. I said, 'Who?' and he said, 'I recognized Cale Patterson, and I think it was his son; he had his face from me, the young man did.'"

The wounded man died in about thirty-six hours afterwards.

These declarations were admitted by the court, not as dying declarations, but as part of the *res gestæ*.

It is entirely plain that they were not admissible. They were no part of the transaction that was being tried. The issue was, whether or not the defendant had inflicted the mortal injury; the subsequent statements respecting that affair did not belong to it as a portion of its substance or as an incident of it. The *res gestæ* were finished, and the wounded man merely described the past transaction. If he could make such description ten minutes after the occurrence, he could do so ten hours afterwards. Nor does it seem that immediate declarations would be more reliable than those that should be made at a later period; for while the latter, in some

cases, might afford time and opportunity for fabrication, it is certain the former might be adulterated by reason of the vindictive passion unavoidably awakened by the strife or accident, and which would have had no chance of becoming appeased. All such statements, whether proximate or remote, are untrustworthy in the extreme; they are not made under oath; they cannot be discussed by cross-examination; nor are they likely to be open to explanation, generally being fragmentary and incomplete, and liable, therefore, to be misunderstood and misreported.

Mr. Wharton correctly defines the rule of law on this subject when he says, "All declarations which* are in the nature of a narrative of past events are inadmissible." 1 *Law Ev.*, § 265.

The decision in the case of the State *v.* Donelly rests virtually upon this basis. There the narration of the murdered man was as closely connected in point of time with the transaction to which it referred as was the narration now in question, and yet the former was not sanctioned on the ground that it was part of the *res gestæ*, but, under the circumstances shown, as a dying declaration. On the assumption that the narration in that case was admissible in evidence for the reason that it was parcel of the matter in issue, it would be manifest that the entire discussion of the subject of the receivability of the statements of persons who are *in extremis* was out of place and uncalled for.

The narrative of the wounded man in the present case should have been excluded.

There was also error in the judicial instruction to the jury.

The court charged as follows, viz.: "If you find from the evidence that the defendant knew that he was at the toll gate and intended and attempted to go through it without paying toll; that to prevent this and to collect toll after he had demanded it, Hart (the deceased) caught hold of the team, which then, being urged by the defendant, or from fright, went on so fast that Hart was thrown to the ground, run over by the wagon, and thereby so injured that he died, then, under that

finding, you would be justified in rendering a verdict of guilty against this defendant." And, also: "That if it should appear to the jury that the act of Hart in stopping the team was *careless and negligent* on his part, nevertheless that fact would in nowise lessen the guilt of this defendant, if your finding as to the facts is as we have just stated the state claims them to be."

In this connection the judge was asked to charge that "if the jury believe defendant was driving on the road, using due care in the management of the team in his charge, and the team was suddenly sprung at by the deceased and thereby frightened and made uncontrollable, causing the death of the deceased, the defendant is not guilty." This instruction was refused.

Therefore it is evident that the legal theory on which the case has been tried is, that the defendant was chargeable with the death which ensued by reason of the single fact of his having attempted to pass through the toll gate without paying his toll; the act being unlawful, it was not necessary that it should appear that it was done in a careless or dangerous manner; nor did it affect this responsibility if the deceased, by his own carelessness, frightened the team, thus producing the fatal result.

This was a plain misstatement of the legal principle. The act of the defendant in making this attempt, in the exercise of due care, was, at its worst, merely *malum prohibitum*, and was, in itself, devoid of dangerous tendency, and therefore was not criminal. The mere unlawfulness of the act does not, in this class of cases, *per se*, render the doer of it liable, in criminal law, for all the undesigned and improbable consequences of it. The doctrine is stated in the text books, and is exemplified in a long train of decisions. 1 *Bish. Crim. L.* (*2d ed.*), § 258.

In this case the jury should have been told that the defendant was guilty as charged, if he did the unlawful act in question under conditions that were dangerous to the toll gate keeper; as, if he drove through the gate at a rapid pace, or

urged his team of mules on after they had been seized by the deceased, or if from their known fractiousness it was hazardous to stop them—the criminality consisting of the two elements, of the unlawfulness of the act, and the unlawfulness and danger in the mode of its execution.

Let the judgment be reversed.