ANNA ROSE, APPELLANT, v. HARRY H. SQUIRES AND SAMUEL J. CAMPBELL, RESPONDENTS.

ALFRED ROSE, ADMINISTRATOR AD PROSEQUENDUM OF LENA ROSE, APPELLANT, v. HARRY H. SQUIRES AND SAMUEL J. CAMPBELL, RESPONDENTS.

Argued November 4, 1925—Decided May 28, 1926.

Seven judges voting to affirm, six on the opinion below and one for other reasons, and five voting for reversal, the judgment is affirmed without any opinion by this court, an opinion here being impossible, as no principle of law as applicable to the case has received the sanction of a majority of the judges.

On appeal from the Supreme Court, whose opinion is reported in 101 *N. J. L.* 438.

WHITE, J. I vote for affirmance in this case for the reasons stated in the opinion of the Supreme Court filed therein, which reasons, I think, adequately cover the facts involved. I do not understand this opinion to question what I understand to be the law which would apply under different circumstances, viz., that while it is true that liability for injury to a trespasser or to a licensee can only arise from a positive intention to do injury, as distinguished from a positive intent only to do the act which by reason of its negligent or unlawful character happens to cause the injury, such an intent to do injury may, nevertheless, be found where the wrongful act willfully done is of such a nature that the injury complained of, is (to the wrong-doer) the obviously natural result to be expected therefrom. This is so because the law presumes that a wrong-doer intends what he knows, or should know, to be the natural consequence of his wrongful act.

In such circumstances mere reckless indifference does not detract from the presumed intent. As was stated by Mr. Justice Katzenbach, speaking for this court in *Slaub* v. *Public Service Railway Co.*. 97 *N. J. L.* 297, 300: "To establish a willful or wanton injury it is necessary to show that one with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result." 29 *Cyc.* 509.

I am directed by Mr. Justice Trenchard and by Judges Gardner, Van Buskirk, Kays and Hetfield, to say that they concur in the foregoing views.

LLOYD, J. (for affirmance). As I vote to affirm the judgment in this case, but was unable to subscribe to the opinion filed in the Supreme Court in its entirety, and as my views differ in this respect from the view held by my colleagues also voting to affirm, it is perhaps desirable that I should state the grounds of my conclusions.

The case as tried in the court of first instance was predicated upon a liability for negligence in the defendant, Campbell, and also upon a liability for willful and wanton injury.

The question upon which the case turns, and upon which a reversal took place in the Supreme Court, is that the trial court erred in submitting to the jury the question of liability of Campbell to the administrator of the deceased, Lena Rose, and to Anna Rose, assuming them to be licensees. It has many times been declared in this court and elsewhere that the test of liability to a licensee or trespasser is that of willful and wanton injury. It is because there was want of proof of the elements that go to make up willful and wanton injury that I voted to affirm the judgment. I dissent, however, from the extreme position taken in the opinion in the Supreme Court, because I think it too narrowly restricts the meaning of the willfulness or wantonness essential to create liability.

In that opinion the court says (quite properly as I think) that there is a substantial difference between mere negligence, albeit gross, and willful injury. It is further added, however, that "it was never suggested in the case that Campbell desired or attempted to hurt his passengers. It would never be claimed that he courted a collision that they would be killed or injured. Familiar instances of willful injury in the old books are the setting of man traps or spring guns to prevent trespassing. They will serve to illustrate the distinction. Willful negligence is common enough; it is often called 'taking a chance,' but unless there is a *positive intent to do injury to a licensee or trespasser, no legal duty is violated."*

In my view it is not essential to create liability that there should be an actual intent to do injury. On the contrary, it seems to me the true rule is expressed with accuracy and backed by abundant authority in the opinion of Mr. Justice Katzenbach speaking for this court in the case of *Staub* v. *Public Service Railway,* 97 *N. J. L.* 297, 300, wherein, quoting from 29 *Cyc.* 509, he says: "To establish a willful or wanton injury, it is necessary to show that one with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act, or omits to discharge some duty, which produces the injurious result."

The opinion of the Supreme Court, it seems to me, excludes liability under the foregoing rule of law, which rule, as I understand it, implies nothing more than that when ones does an act with the knowledge of the circumstances, and with further knowledge that the doing of that act will likely do injury to another, whether done purposely or recklessly, with indifference to consequences, the law will attach to such conduct, if injury ensues, the willfulness and wantonness of which the books are full. In other words, it was not essential that Campbell should have an actual purpose to kill or injure the other occupants of his car to create liability; it is sufficient if his conduct in the operation of his

car, with the knowledge of the dangerous consequences likely to follow from his driving, would probably do injury to or kill them, and the law would attach to his recklessness and indifference to their safety the element of wantonness regardless of actual intent. This, I think, is the doctrine of all the modern cases. Such is the principle underlying the decision of this court in the case of *State* v. *Schutte,* 88 *N. J. L.* 396, in which there was a conviction of assault and battery. The defendant drove his car at a dangerous rate of speed through a crowded thoroughfare. There was no claim in the case of the existence of a purpose to do injury to others. In the opinion of Mr. Justice Garrison, 87 *Id.* 15, affirmed by this court in 88 *Id.* 396, we find this language: "Counsel for the plaintiff in error correctly contends that both the willful wrong-doing that constitutes malice in the law, and also an intention to inflict injury, are of the essence of criminal assault, and that, as a necessary corollary, mere negligence will not sustain a conviction for such crime. With these abstract propositions no fault is to be found, provided it is borne in mind that the necessary malice may be implied from the doing of an unlawful thing from which injury is reasonably to be apprehended, and also that an intention to injure need not be specifically directed to the particular individual that was injured, but may be inferred in law from the consequences that are naturally to be apprehended as the result of the particular act, the doing of which was intentional."

To like effect in the case of *Haucke* v. *Beckman,* 96 *N. J. L.* 409, where it was held that the driving of an automobile at forty to fifty miles an hour around a curve, striking and injuring one standing on private property beside the roadway (presumably out of view), exhibited such a wanton and reckless disregard of the injured person's rights as to stamp the driver's conduct as willful and intentional. It is obvious that the willfulness indicated is a legal implication and not an actual fact, for the reason that it is quite apparent that the driver was in total ignorance of conditions beyond the curve, and certainly did not intend to strike or

injure the girl standing on private property. It was the reckless doing of an act which would likely lead to serious consequences, to which the law attached a wrongful motive. (It is to be noted, by the way, that the learned writer of the opinion in the Supreme Court in the present case subscribed to the judgment in the case last quoted, and were it not for the explicit language used and the concrete illustrations set forth in the opinion, seemingly at variance therewith, I would be inclined to regard the purpose of that opinion as not intended to antagonize the legal principle set forth in the cases I have quoted.)

It seems to me that these cases fully demonstrate that an actual intent on the part of Campbell to do injury either to himself or to the women by his side was not essential to create liability, even though they were but licensees, but that it would be sufficient if the acts done by Campbell were of such a character as to be likely to cause death or injury, and that these acts were not willfully performed with a knowledge of their probable consequences.

I am voting to affirm the case, however, because I do not find evidence leading to the conclusion that Campbell's conduct was willful or wanton. He was proceeding south along a well-known open highway known as Norwood avenue, leading from Long Branch to Asbury Park. Norwood avenue is intersected from the east by Lincoln place. The day was clear and the accident happened at four o'clock in the afternoon by reason of a collision between the car driven by Campbell and the car of one Squires, which entered Norwood avenue from Lincoln place. It is true that there was testimony that Campbell was proceeding at a speed of forty to forty-five miles an hour, but it is also true that, ordinarily, he would have the right of way over the Squires car, and that Lincoln place did not cross Norwood avenue. While the legal limit of speed upon the highways is thirty miles an hour, even negligence is not necessarily determined by speed limits. The speed that would be safe under one set of circumstances would be highly unsafe under other conditions. The question of negligence, however, was rightly submitted

to the jury. The speed at which defendant was driving was clearly evidence of negligence, but this does not imply liability because of willfulness or wantonness in acts calculated to injure persons or property. A speed of forty to forty-five miles an hour is not uncommon on the highways, and where it is in the open country, with no obstruction, it would be going too far, in my judgment, to hold that such a speed, standing alone, without evidence of conditions of far more dangerous character than are here presented, is sufficient to justify a finding of that reckless indifference to life essential to create liability to the deceased and to the living plaintiff.

For the reasons above stated I agree with the conclusion reached by the Supreme Court in reversing the judgment at Circuit, though not agreeing with the test of liability in such cases as set forth in the opinion filed in that tribunal.

KALISCH, J. (dissenting). There was a verdict of a jury in favor of the plaintiff and against Samuel J. Campbell, in the Monmouth County Circuit Court, a nonsuit having been granted as to the other defendant Harry H. Squires, in an action brought under the Death act by the plaintiff against the defendants, to recover the pecuniary loss sustained by the husband in the death of his wife through the wrongful act of the defendants. From the judgment entered upon the verdict the defendant Campbell appealed to the Supreme Court, which tribunal reversed the judgment of the Circuit Court and gave judgment for the defendant. From this judgment of reversal the plaintiff appeals to this court. The jury having determined the disputed question of fact, it is the settled legal rule that, on an appeal, the jury's finding of facts are unassailable. The state of the case disclosed that the case was submitted to the jury by the trial court on the two issues raised under the pleadings and the evidence, which were: 1. Was the plaintiff's decedent an invitee of the defendant? 2. Or was she a mere licensee? If an invitee, of course, the duty of the defendant was to use ordinary care in operating the automobile in which the

plaintiff's decedent was riding, and, if he failed in that duty, which resulted in her injury or death, he would be answerable in damages. On the other hand, if she was a mere licensee, then, under a harsh rule of law, the only duty devolved upon the wrong-doer was to abstain from doing a willful wrong or injury to his passenger. It will not be out of place to point out here that the "familiar instances of willful injury in the old books are the setting of man traps or spring guns to prevent trespassing," as is said, in the opinion of the Supreme Court, as serving to illustrate the distinction between mere negligence and willful negligence. The phrase, "willful negligence," seems to me to be a loose expression. There is, however, a marked difference between mere negligence, gross negligence and a willful act. A willful, wrongful act is not, necessarily, a negligent one. But all negligent acts resulting in injury are embraced in the category of either public or private wrongs. Here is also the proper place to point out that, at common law, the distinction between the duty owing to an invitee and the duty owing to licensee was strictly confined to relations and duties arising out of proprietary or possessory rights of an owner or tenant of premises to persons entering thereon, by invitation, or as licensees or as trespassers. I have been unsuccessful in finding any authority in the early cases of the application of such a rule of law as to the use and management of personal property. The settled legal rule, however, in this state, is that if A invites B to take a ride in the former's automobile, and the latter accepts, A owes him a duty to use reasonable care in operating the automobile, but if, on the other hand, B asks A to take him for a ride in the automobile, and A assents and takes B into the car, A is under no duty to exercise reasonable care in operating it, and if B suffers an injury by reason of A's failure to carefully and properly operate the car, B is without remedy. In order to entitle B to recover he must establish that the injury to him was the result of A's willful, wrongful act. Even though the distinction between the duty owing to an invitee and that owing to a licensee is more chimerical than

real, nevertheless, it cannot be disregarded since it is the established law, and, at any rate, it does not become necessary, under the facts of the present case, to depart from or unsettle the legal rule to uphold the judgment of the trial court. There was proof that the plaintiff's decedent was an invitee. The first count of the complaint alleged that the plaintiff's decedent was invited by the defendant to ride in his automobile. The second count, without alleging that the plaintiff's decedent was invited to ride in his automobile, alleges that she was riding in the defendant's automobile, that the said defendant then and there drove the same willfully, wantonly and recklessly, &c. The defense was that the plaintiff's decedent was a licensee. This raised an issue of mixed law and fact whether under the evidence the plaintiff's decedent was an invitee or licensee. It, therefore, became obligatory upon the trial judge to charge the jury, what, in law, constituted a willful act of wrong-doing. The Supreme Court took the view that the trial judge erred in his charge in stating what in law constituted a wanton or willful act, and that "there was nothing in the testimony to warrant the court in permitting the jury to infer malicious intent from the alleged reckless driving." This seems to me to be an erroneous conception of the law as applicable to the facts of the case. Now, what were the facts? They were, briefly, these: The plaintiff's decedent was a passenger in the defendant Campbell's car. The testimony is plenary, that he was speeding the car along the road between forty-five and fifty miles an hour. Anna Rose, who was sitting in the front seat of the automobile, testified that on observing the speed at which the car was going she turned to the defendant and said, "You are going too fast, Mr. Campbell," and she repeated this several times, and his only reply was, "damned cold," and he held his head up in the air and didn't look to the right or to the left. This witness further testified, when the defendant's automobile was about two hundred feet from Lincoln avenue, an intersecting street which did not cross the avenue, she saw that the speedometer of the car registered a speed of forty-five miles an

hour, "going up to fifty," between forty-five and fifty, and then back to forty-five again, and she told him to stop, when a moment later she heard a click, then a dash, and something was struck; that it was after the accident happened that she smelled liquor upon him. There was testimony to the effect that the witness Squires was driving his automobile west on Lincoln avenue slowly into Norwood avenue and headed south, when the defendant in trying to pass his, Squires', car on its right side, struck it and veered off to the right and went faster for about one hundred feet when its further progress was stopped by a tree, the impact with which smashed the car and upset it with a fatal result to the plaintiff's decedent. The defendant testified that his car hit the tree with great force and was pretty well wrecked. Moreover, there was testimony coming from Squires that his car, when he made the turn from Lincoln avenue into Norwood avenue, the defendant's car was two hundred feet away, and that the defendant had a clear view of the position of the car of the witness, and that there was a space of only six or eight feet on the tar pavement of the road to the right of his, Squires', car to permit the passage of the defendant's automobile, and that the defendant took a *chance* to pass to the right of Squires' car, at a high and unlawful rate of speed, on the six or eight feet of tar pavement, without coming into collision with Squires' car. It is difficult to comprehend how it can be fairly said, in view of the facts detailed, and especially from the fact that the defendant was repeatedly remonstrated with not to drive so fast, and, notwithstanding, his persistence in continuing the reckless speed at which he was going, and his attempt, with undiminished speed, to pass the car ahead on a strip of tar pavement six to eight feet in width, with the knowledge that he had two passengers in his car, one of whom had pleaded with him to stop his speeding, that his act was not willful and did not evince a reckless disregard of the lives or limbs of his passengers.

To me it seems that the conduct of the defendant, as disclosed by the testimony, constituted a willful and wrongful

act, evincing a reckless disregard of human life, and, therefore, it was proper for the trial judge, on this phase of the case, to submit the facts *pro* and *con* to the jury for its determination.

The rationale of the opinion of the Supreme Court in holding, on this branch of the case, that the facts did not warrant their submission to the jury as establishing an actionable tort, is stated thus: "It was never suggested in the case that Campbell desired or attempted to hurt his passengers. It would never be claimed that he courted a collision hoping that they would be killed or injured. Familiar instances of willful injury in the old books are the setting of man traps or spring guns to prevent trespassing. They will serve to illustrate the distinction. Willful negligence is common enough; it is often called 'taking a chance.' But, unless there is a positive intent to do injury to a licensee or trespasser, no legal duty is violated."

\*          \*          \*          \*          \*          \*          \*          \*

In *Faggioni* v. *Weiss*, 99 *N. J. L.* 157 (at *p.* 161), this court said: "We hold, therefore, that the driver of a private vehicle owes no duty to a trespasser, or a mere licensee thereon, except to abstain from acts willfully injurious." Surely, the cited case does not support the pronouncement made by the Supreme Court, that because there was no testimony that Campbell desired or attempted to hurt his passengers, or that he courted a collision hoping that his passengers would be killed, or that there was a positive intent on his part to do injury to his passengers, that, therefore, there was no actionable, willful injury. That there was no positive testimony tending to establish any one of these circumstances pointed out by the Supreme Court may well be conceded. But this was wholly unnecessary. This was recognized very early in the history of the law. The legal rule that a wrong-doer will be presumed to intend the consequences of his wrong has not been abated from a jot. Without the help of this most beneficent and salutary rule, the attempt to administer justice would prove a lamentable failure. The rule itself is a complete answer to the view

expressed by the Supreme Court as to what shall constitute an actionable, willful injury. A person cannot reasonably be permitted to excuse himself from the consequences of his willful and wrongful act upon the plea that his mind was in a state of indifference, in fact that he had no thought of what might or might not ensue. We can only judge of the operation of the mind of a person by his acts. It is idle to attempt to lay down any complete definition of what shall or shall not constitute an actionable, willful or wanton injury. We can safely go no further than to declare that before a trespasser or licensee is entitled to recover for an injury done him he must show that the act of the wrongdoer was willful or wanton. The conspicuous fallacy in the view taken by the Supreme Court lies in making the *intent* to *injure* the person the criterion of liability of the wrong-doer, whereas all the well-considered cases hold, and the generally recognized principle of law is, that it is *the intent* to do the *act* which caused the injury, which is to be considered and is the controlling factor. For if the injury was the result of negligence, however gross, he is remediless. As before stated, a wrongful act is not necessarily a negligent one. Whether or not the act which caused the injury was willful or wanton necessarily depends upon the facts of the individual case. The wrongful act may be both willful or wanton and negligent. Nor is gross negligence equivalent to a willful or wanton wrongful act. Gross negligence is simply a degree of negligence, and remains within the realm of negligence. Whether the negligence is gross or ordinary depends upon the degree of care required and the circumstances surrounding the doing of the act. In the present case the factual question for the decision of the jury was whether the defendant was guilty of a willful or wanton injury. The proof was that the defendant was driving his automobile with his two passengers along a public road intersected by streets at a speed of forty-five to fifty miles an hour, a speed at which express trains are propelled along the right of way of a railroad company, and it seems to me from this fact alone it was permissible for the jury to find that

the defendant's act was reckless and wanton; but this is not all, for it further appeared that he was remonstrated with by one of his passengers and repeatedly requested not to go so fast, and he gave no heed to this request, and, in addition to this, he undertook to pass the automobile ahead of him, by way of the narrow passage to the right of it, without diminishing his rate of speed, in clear violation of the Motor Vehicle act, and, furthermore, by going at a speed of more than thirty miles an hour, he was violating an express mandate of subdivision 1 of section 16 of the Motor Vehicle act, chapter 208 (*Pamph. L.* 1921, *pp.* 668, 669), which provides: "The following rates of speed may be maintained, but shall not be exceeded, upon a public street, public road or turnpike, public park or parkway, or public driveway, or public highway in this state by anyone driving a motor vehicle," and after providing for different rates of speed that may be maintained in cities, towns, &c., it declares: "Elsewhere, and except as otherwise provided in subdivisions 1, 2 and 3 of this section, a speed of thirty miles per hour; *provided, however,* that nothing in this act contained shall permit any person to drive a motor vehicle recklessly or at any speed greater than is reasonable, having regard to the traffic and the use of the highways or so as to endanger the life or limb or to injure the property of any person."  *  *  *

According to the testimony he was not only exceeding the statutory limit of speed, which made his act unlawful, but was also driving his vehicle recklessly in defiance of the statutory mandate. We have abundant authority in this state to the effect that the willful violation of the mandate of a statute involves moral turpitude—an evil state of mind. *State* v. *Williams,* 30 *N. J. L.* 102; *Meyer* v. *State,* 42 *Id.* 145 (at *p.* 157); *State* v. *Martin,* 77 *Id.* 652 (at *pp.* 654, 655.) This evil state of mind is what is known and termed malice in law. But independent of any consideration of the provision of the Motor Vehicle act alluded to, it is my view that the conduct of the defendant, as disclosed by the testimony, was sufficient to establish a willful or wanton wrong-

ful act on his part, which made him responsible for the consequences which ensued. In *Aiken* v. *Holyoke Street Railway Co.,* 184 *Mass.* 269; 68 *N. E. Rep.* 238, Chief Justice Knowlton (at *p.* 239) says: "The law is regardful of human life and personal safety, and, if one is grossly and wantonly reckless in exposing others to danger, it holds him to have intended the natural consequences of his act, and treats him as guilty of a willful and intentional wrong. It is no defense to a charge of manslaughter for the defendant to show that, while grossly reckless, he did not actually intend to cause the death of his victim. In these cases of personal injury there is a constructive intention as to the consequences, which enter into the willful, intentional act the law imputes to the offender, and in this way a charge, which otherwise be mere negligence, becomes, by reason of a reckless disregard of probable consequences, a willful wrong. That this constructive intention to do an injury in such cases will be imputed in the absence of an actual intent to harm a particular person is recognized as an elementary principle in criminal law. It is also recognized in civil actions for recklessly and wantonly injuring others by carelessness."

In *Southern Railway Co.* v. *McNeeley,* decided by the Appellant Court of Indiana, and reported in 88 *N. E. Rep.* 710, Roby, P. J., cites from standard authorities the following: "The authorities from earliest year of the common law recognizes the rule that there may be a willful wrong without a direct design to do harm. This principle has been applied to furious driving; to collisions between vessels; to the taking of unruly animals into crowds; to carelessly laying out poison for rats; to want of caution toward drunken persons, and to the careless casting of logs and the like upon highways." 1 *Hale P. C.* (*Am. ed.*) 475, and authorities *note* 4; *Bl. Com.* 182, Dr. Wharton gives full recognition to this principle, and shows its application to railroads. *Whart. Hom.,* ¶¶ 80, 87, 94, 155. Mr. Bishop very fully and ably discussed the question and cites many authorities. In the course of his discussion he says: "There

is little distinction, except in degree, between a positive will
to do wrong and an indifference whether wrong is done or
not. Therefore, carelessness is criminal, and, within limits,
supplied the place of the direct criminal intent." In another
place this author says: "If a man neglects obvious means
to learn what will be the probable consequences of his act,
and so proceeds rashly, the doctrine of carelessness, already
discussed, applies to the case, and he is not excused." 1
*Bish. Cr. L.,* § 324. "These authorities declare and illustrate
a fundamental principle of the criminal law, long estab-
lished and long maintained without dissent, and we cannot
affirm that where the question is one of mere civil liability a
more lenient rule prevails in favor of the wrong-doer. Nor
do the decided cases justify the conclusion that more favor-
able rule prevails in civil cases."

In *Evers* v. *Davis,* 86 *N. J. L.* 196, Mr. Justice Garrison,
speaking for this court (at *p.* 204), says: "Upon common
law principles, therefore, when the legislature has by public
statute established a certain standard of conduct in order to
prevent a danger that it foresaw, which has in this regard
forewarned the 'ordinary prudent man,' and through him
the defendant in a civil action, whose conduct must always
coincide with this common law criterion. Such danger,
therefore, does not have to be proved by the plaintiff, since
there is no longer room for a reasonable difference of opinion,
for by his breach of the statute the defendant, through his
common law conscience, is charged with knowledge that if
injuries ensue he will have acted at his peril." And in *State*
v. *Schutte,* 87 *Id.* (at *p.* 15), this distinguished jurist, speak-
ing for the Supreme Court (at *p.* 18), among other things,
said: "It requires neither argument nor illustration to show
that the excessive rate of speed at which an automobile is
driven is a product of the will of its driver and not the result
of his mere inattention or negligence." This case was
affirmed in this court in 88 *Ibid.* (at *p.* 396), in a *per curiam*
opinion, and I find nothing in that opinion which in anywise
controverts the statement made by the learned justice in the
Supreme Court opinion, "that the excessive rate of speed at

which an automobile is driven is a product of the will of the driver and not the result of his mere inattention or negligence." The illustration given in the *per curiam* opinion does not and cannot combat successfully the impregnable statement "that the excessive rate of speed at which an automobile is driven is a product of the will of its driver and not the result of his mere inattention or negligence." Whether or not the speed was excessive and reckless under the circumstances was a factual question for a jury to decide and not a question for the court. Where a statute declares in express terms, as does the Motor Vehicle act, that the speed of a motor vehicle driven on a country road shall not exceed thirty miles an hour, it clearly indicates that the rate of speed may be maintained when it is reasonably safe to do so. And as a corollary a speed of exceeding thirty miles an hour, irrespective of the condition of the roads, is not only excessive but is also unlawful, because the legislature limited the lawful rate of speed to thirty miles an hour. The legislature declared its intent and meaning, clearly and explicitly, in section 16 of the Motor Vehicle act, thus: *"Provided, however,* that nothing in this act contained shall permit any person to drive a motor vehicle recklessly, *or* at any speed greater than is reasonable, having regard to the traffic and use of the highways, or so as to endanger the life or limb or to injure the property of any person." If statutes are to be emasculated by major operations and healed by cobweb refinements, the safety of the public will be at the mercy of the violators of the law.

Referring to the reasons given in the *per curiam* opinion in *State* v. *Schutte, supra,* it at once becomes evident that it is utterly inapplicable to the facts of the case *sub judice.* Any attempt to give an illustration, by the assumption of a certain state or condition of facts, that is to serve as a fixed standard and test of what shall or shall not constitute a reckless disregard of life or limb, is obviously an idle and vain task. For the manifestations of reckless conduct are as numerous and variant as are the vari-colored forms in the kaleidoscope. Besides the example is faulty in many re-

spects, principally in that it requires the driver's act to be *deliberate* in driving into a crowd, &c., which is contrary to the consensus of judicial opinion, and, secondly, the example assumes that there must be a crowd of persons standing in the street watching a baseball scoreboard in order that the conduct of the driver, going at a low rate of speed, shall be considered willfully reckless.     Why the example was confined to a crowd of persons, thereby impliedly excluding a single person standing in the street doing the same thing, is incomprehensible.     To me it seems that, in either situation, a driver, even though going at a low rate of speed, who deliberately runs into a crowd, or a single person, and death results from the injury inflicted, would, according to the settled law of this state, be guilty of murder in the second degree.     The illustration is inapt and does not convey the true legal principle which must be applied to the facts of this case.     As has been pointed out, it is a very simple effort to conjure up many different situations which might or might not indicate the nature or character of the act of the offending automobilist.     But we are not concerned with this. We are only concerned with the facts before us, and they represent the defendant driving an automobile at a speed of forty-five to fifty miles an hour in violation of the statute and against the protest of his passenger; taking a chance that his tire will not burst; that his car will not skid; that some cat or dog might not run across the road and by impact with it deflect the course of his automobile; or that some automobile would not come out of some intersecting street, and which event happened in this present case and caused the accident and death of the plaintiff's decedent; and, furthermore, taking a chance of avoiding a collision in passing to the right of Squire's car, with undiminished speed, on the six or eight feet of tar pavement.     Confronted with these probabilities and possibilities, it cannot be properly said that the driver was not taking a chance against anything that might happen, as a result of his furious driving, without declaring, arbitrarily, that what is or is not a willful and wanton act must depend wholly upon what the offender says his intentions were.     Such a theory is palpably unsound.     The

books are replete with cases where persons have been convicted of murder, of which willfulness is one of the constituents of the offense, merely from the inference to be drawn from the fact that the use of a deadly weapon by them caused the death of the victim. To declare, in view of all these manifestations of reckless conduct, that there was no question of fact for a jury to determine, staggers human comprehension. An automobile operated by a reckless driver is as much a deadly weapon as is the dagger in the hands of an assassin. The only protection to human safety in either case is to be forewarned. And it has been repeatedly held by our courts that where death is the result of an act which evinces a reckless disregard of human life or limb the crime is manslaughter. So it seems to me that it is quite clear from the facts of the case that the jury was warranted in finding that the defendant's conduct evinced a reckless disregard of human life and limb, and was the proximate cause of the plaintiff's decedent's death. The Supreme Court reversed the judgment of the trial court upon the sole ground "that there was nothing in the testimony to warrant the court in permitting the jury to infer malicious intent from the alleged reckless driving." The purpose of this dissenting opinion is to make clear that express malice is not necessary to be proved, and that legal malice is implied from the doing of the willful or wrongful act. The trial judge's charge on the question of liability of the defendant to the plaintiff on the theory of the plaintiff's decedent being a licensee was more favorable to the defendant than he was entitled to under the law. The trial judge said: "But, finally, in discussing this phase of the case, if you find that they were licensees, and that he was guilty of the willful negligence to which I have referred, and which I may supplement with this observation as to willfulness, that a thing is so done recklessly with intent and without just cause or excuse." The well-considered cases do not go to this extent. An indifference on the part of a person, as to whether or not his act causes injury to another, may be made the basis of a finding that the person intended the consequences of his act.

For the reasons given, I vote to reverse the judgment of the, Supreme Court and to affirm the judgment of the Monmouth Circuit Court.

Justices Black and Campbell and Judge McGlennon concur in the views expressed in this opinion.

For the appellant, *Benjamin M. Weinberg.*

For the defendants, *Mark Townsend, Jr.*

PER CURIAM.

The judgment under review herein is affirmed, seven judges voting to affirm and five reverse; but because no principle of law as applicable to the case has received the sanction of a majority of the members of this court (nine), the judgment is affirmed solely because of the affirmative vote of a majority of the quorum. See *Katz* v. *Eldredge,* 98 *N. J. L.* 125.

The vote in both cases was—

*For affirmance*—TRENCHARD, LLOYD, WHITE, GARDNER, VAN BUSKIRK, KAYS, HETFIELD, JJ.    7.

*For reversal*—THE CHANCELLOR, KALISCH, BLACK, CAMPBELL, McGLENNON, JJ.    5.