10 N.J. Super. 224 (1950)
76 A.2d 915
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOSEPH A. NERI, DEFENDANT.
Superior Court of New Jersey, Somerset County Court Law Division.
Decided October 26, 1950.
*225 Mr. Benjamin Gordon argued the cause for the defendant.
Mr. Leon Gerofsky, Assistant Prosecutor, Somerset County, argued the cause for the State.
SMITH, J.C.C. (orally, after hearing arguments of counsel).
The statute under which this defendant is indicted, R.S. 2:138-9 requires, in order to hold a defendant charged with its violation guilty of the charge, that he "shall cause the death of another by driving any vehicle carelessly and heedlessly in willful or wanton disregard of the rights or safety of others."
Some reference has been made to gross negligence in the arguments of this motion and in the memorandum presented by counsel for the defendant, citing cases which apparently arose out of indictments for manslaughter rather than indictments under the statute referred to, and in which cases the *226 court was specifically considering what constituted gross negligence. I think it is to be noted, however, that the statute itself does not use the term "gross negligence" at all, but requires of the defendant, in order to sustain a conviction, that he be guilty of some act or acts incident to the driving of the vehicle as a result of which he could be found to have been guilty of driving "carelessly and heedlessly in willful or wanton disregard of the rights or safety of others."
It has been held by our courts that there is a distinction between gross negligence and willful and wanton disregard of the rights and safety of others. The test is the intent with which the act is committed. To constitute willfulness, there must be design, purpose, intent to do wrong and inflict injury. To constitute wantonness, the party doing the act, or failing to act, must be conscious of his conduct, and, without having the intent to injure, must be conscious, from his knowledge of existing circumstances and conditions that his conduct will naturally and probably result in injury. See Eatley v. Mayer, 9 N.J. Misc. 918 (Hudson Cty. Circ. Ct. 1931); affirmed, 10 N.J. Misc. 219 (Sup. Ct. 1932), and also Staub v. Public Service Railway Company, 97 N.J.L. 297 (1922), the latter case being an opinion by the Court of Errors and Appeals; Iaconio v. D'Angelo, 104 N.J.L. 506 (E. & A. 1928).
In the case of Rose v. Squires, 101 N.J.L. 438 (Sup. Ct. 1925); affirmed, 102 N.J.L. 449 (1926), the Court of Errors and Appeals stated that in order to amount to willful or wanton misconduct the wrongful act willfully done must be "of such a nature that the injury complained of is (to the wrongdoer) the obviously natural result to be expected therefrom. This is so because the law presumes that a wrongdoer intends what he knows, or should know, to be the natural consequence of his wrongful act."
In State v. Reitze, 86 N.J.L. 407 (Sup. Ct. 1914), Chief Justice Gummere, speaking for the Supreme Court, said at page 409, * * * "it is clear as is said by Dr. Wharton, in his work on Criminal Law (section 1003), that where death *227 is the result of an occurrence unanticipated by the defendant, but which arose from his negligence or inattention, his criminal responsibility depends on whether or not the injury which caused the death was the regular, natural and likely consequence of defendant's conduct. If it was, then the defendant is subject to indictment. If it was not, he cannot be properly charged with a penal offense."
While it may be true that violations of the provisions of the Motor Vehicle Law are elements which may and probably should be taken into consideration in a case of this character, mere violations of regulatory statutes are not sufficient to make a person criminally liable for death. See Estell v. State, 51 N.J.L. 182 (Sup. Ct. 1889); State v. Dugan, 84 N.J.L. 603, at 607 (Sup. Ct. 1913); affirmed, 85 N.J.L. 730 (E. & A. 1914); State v. Reitze, supra, at 408.
As I have already indicated, the statute under which the defendant has been indicted does not use the term "gross negligence." I think it's not necessary, therefore, to discuss or decide what acts may constitute gross negligence. It seems clear to me that the State's proofs in this case are not of such character as to suggest that the acts or conduct of the defendant were such that he must be presumed to have known, or to have been conscious, that his acts or conduct were such that the death of Elliott would naturally and probably result from his acts.
The grade on which the defendant parked his truck, according to the testimony, does not appear to have been a sharp or severe grade. The brakes on his truck were found to have been in excellent condition. It was indicated by the testimony that the vibration, if it was the vibration, which caused the truck to move, would have caused the truck to move so slightly and slowly at first as to make its movement imperceptible. It is suggested, also, from the testimony of Police Captain Barrett, that there was not any real fault on the part of the driver in thus parking his truck, but that it was just an unfortunate condition of having parked on a slight incline. There is nothing in the case to suggest that the defendant *228 was conscious, or should have been conscious, that the parking of his truck on this slight incline, even with its motor running and otherwise in violation of the provisions of the Motor Vehicle law would naturally and probably result in the truck moving down the slight grade, gaining momentum and subsequently causing the death of or injury to the person or property of another, or, as was said by the courts in some of the cases above referred to, that such would be the obviously natural result to be expected from his acts or the regular and likely consequence of his conduct.
I am of the opinion that the State's proofs have failed to establish a prima facie case against the defendant and I am therefore constrained to grant the defendant's motion for a judgment of acquittal. The motion, therefore, will be granted.